# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **ALECIA M. RIDEAU, M.D.** | **CIVIL ACTION NO. 6:18-CV-00473** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LAFAYETTE HEALTH VENTURES, INC., ET AL.** | **MAG. JUDGE PATRICK J. HANNA** |

## RULING

Pending here is Plaintiff Alecia M. Rideau, M.D.'s ("Plaintiff" or "Dr. Rideau") Motion to Exclude Evidence (Report) and Testimony of Defendants' Expert, Timothy W. Stanley [Doc. No. 64]. Defendants Lafayette Health Ventures, Inc. ("LHVI"); Lafayette General Health System, Inc. ("LGHS"); Lafayette General Medical Center, Inc. ("LGMC") (collectively the "LGH Defendants"), and Al Patin ("Patin"), have filed an opposition [Doc. No. 73].

For the following reasons, Plaintiff's motion is DENIED.

**I.  FACTS AND PROCEDURAL HISTORY**

Dr. Rideau filed this lawsuit against Defendants under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. ("FMLA"), alleging two claims for relief: (1) interference under the FMLA, in that Defendants illegally denied her FMLA leave; and (2) retaliation under the FMLA, in that Defendants retaliated against Plaintiff for exercising her FMLA rights, culminating in her termination from employment.  [Doc. No. 1].

Dr. Rideau is a radiologist whose specialty is interpreting breast imaging.  [*Id*. at ¶ 12]. From December 1, 2014, to September 1, 2016, Plaintiff worked at the Breast Center at LGMC. [*Id*. at ¶ 13].  Dr. Rideau alleges that, after she was diagnosed with breast cancer, took FMLA

leave to have a double mastectomy, complained about retaliation associated with exercising FMLA rights, and requested a second FMLA leave for breast reconstructive surgery, Defendants terminated her employment.  [*Id*. at ¶¶ 14, 22, 34 and 35].

One of the affirmative defenses which Defendants intend to assert at trial is that Dr. Rideau did not mitigate her damages.  Toward that end, they have retained Timothy J. Stanley ("Stanley") as an expert in the field of "physician job placement."  Defendants intend to have Stanley give opinion evidence as to whether substantially equivalent work is available to Dr. Rideau and as to whether Dr. Rideau has failed to use reasonable diligence to obtain it.  Stanley is additionally expected to testify as to market physician salary medians.

Here, Dr. Rideau seeks an order prohibiting Defendants, their counsel, or any witness from attempting to introduce either the testimony of Stanley or his January 21, 2019 report ("the Report").  Dr. Rideau contends that Stanley's opinions are inadmissible because he fails to meet the standards for expert testimony under FED. R. EVID. 702 and 704, in that he is not qualified to render his opinion in this case and his opinions are based upon insufficient facts with no analytical methods related to the facts of this case.

Dr. Rideau further contends that, to the extent any of Stanley's testimony or the Report is deemed admissible, the limited probative value of such testimony is substantially outweighed by the dangers of unfair prejudice and waste of time, and should, therefore, be excluded pursuant to FED. R. EVID. 403.

Defendants respond that Stanley's skill, knowledge, and experience spanning twenty-five years establish that he is qualified to testify as an expert in the field of physician job placement. Defendants further contend that, under post-*Daubert* standards, Stanley need not meet the same

2

standards as scientific experts; instead, he need only demonstrate that his experience qualifies him, and that his methodology was reliable and will assist the trier of fact.

Defendants additionally assert that Stanley's opinions as to prominent physician job boards and market physician salary medians are reliable under FED. R. EVID. 702 and 704. Finally, Defendants argue that Stanley's experience and expertise would assist the trier of fact without any prejudice or waste of time.

## II. LAW AND ANALYSIS

### A. Standard of Review

FED R. EVID. 702 establishes the standards for admissibility of expert testimony to assist a trier of fact in understanding evidence or determining a fact in issue. In determining whether expert testimony is reliable and relevant, the district court's role in applying Rule 702 is that of a gatekeeper. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597-598, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596.

In determining whether to allow expert opinion testimony, the court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified

3

to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, FED. R. EVID. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Services, Inc.,* 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert,* 509 U.S. at 591-92).

As to reliability, Rule 702 only authorizes the admission of expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Expert testimony requires more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590.

**B.     Analysis**

**1.     Qualified to Render an Opinion**

Dr. Rideau contends first that Stanley is not qualified to render an opinion in this case because he has never worked as a vocational expert or vocational rehabilitation advisor or expert; he has never authored any professional literature such as books or scholarly articles; he has never been qualified as an expert in any case and has written no litigation reports in the last five years other than the one in this case; he does not possess a college degree; he has never taught a course at a college or community college on physician recruitment; he has never given any lectures or

seminars on the topic of physician recruitment; and he has never published any articles, papers, book chapters, or studies concerning physician recruitment.

Dr. Rideau further asserts that Stanley is simply a marketer for hospitals seeking doctors, with no expertise or background that qualify him to give his opinions. Dr. Rideau states, for example, when asked to explain how he recruits physicians, Stanley explained that it involves cold call telemarketing, scouring different job boards, renting name and address lists to send direct mail through the post office to physicians, email campaigns targeting physicians, and tables at physician conventions.

Dr. Rideau concludes that, "[w]hile Stanley's work experience gives him plenty of expertise as a telemarketer and junk mailer to doctors, it gives him no foundation for offering an opinion in this case concerning whether comparable, substantially equivalent employment existed in the relevant geographic market and whether Plaintiff took reasonable steps to find such employment." [Doc. No. 64-1, p. 17].

Defendants respond that, following *Daubert*, in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court expanded the expert analysis to include *non-scientific* testimony. The Supreme Court in *Kumho*, explaining that "there are many different kinds of experts, and many different kinds of expertise," found that the Daubert factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*. at 150.

Defendants thus argue that Dr. Rideau's implications that *Daubert* is strictly applied and that experts must have a college degree, teaching experience, lecture and seminar experience, and published writings, are more appropriately discussed in the analysis of a *scientific* expert.

5

Defendants further contend that Dr. Rideau's arguments ignore that there are many different kinds of experts, including those mentioned in *Kumho*: experts on "drug terms, handwriting analysis, criminal modus operandi, land valuation, agricultural practices, railroad procedures, attorney's fee valuation, and others." *Id*.

Defendants have established that Stanley is a veteran physician recruiter with twenty-five (25) years of experience in the industry. Working from 1992 to 1999 as a Search Consultant with Hayman Daugherty Associates in Roswell, Georgia, Stanley worked with employment-seeking physicians directly. His Search Consultant role included reviewing candidates' curriculum vitae and credentials in order to place them at clinics, hospitals, and other medical facilities, and negotiating salary requirements on their behalf based on the market. He gained experience in placing job-seeking physicians and in researching physician salaries in consideration of market standards.

From 2000 to 2012, Stanley was employed by STAT Associates Services, a company that he started and owned until its merger with Emergency Medicine Resources in September of 2012. There, he represented facilities searching for qualified physicians, nurse practitioners, and physician assistants.

He was employed by Emergency Medicine Resources from 2012 until 2015. As a Senior Managing Consultant, Stanley averaged 67% successful physician job placements annually. He recruited, managed relationships with physicians, consulted for over thirty medical directors and administrators, oversaw full-cycle requirements, curriculum vitae review, interviews, and salary negotiations, and designed key metrics for the company.

Finally, he began his tenure with Pinnacle Health Group, LLC, in 2015 as a Senior Recruiter, and within one year he had been promoted to Senior Vice President of Recruiting. There, he researches general job placement standards, including current physician salary standards, and search and recruitment techniques. He placed sixty-five (65) job seekers in a span of three years. Part of his current job position includes giving lectures to and serving as a mentor for new recruits.

This Court finds that Defendants have sufficiently established Stanley's qualifications as an expert in the field of physician job placement. Dr. Rideau's challenges to Stanley's qualifications should go to the weight and credibility of his opinions rather than their admissibility. *See e.g., United States v. Wen Chyu Liu*, 716 F. 3d 159, 168 (5th Cir. 2013), *cert. denied*, 124 S. Ct. 1011 (2014).

### 2. Insufficient Facts and Analytical Methods

Second, Dr. Rideau contends that Stanley's opinions are based upon insufficient facts with no analytical methods applicable to the facts of this case. She argues that the methodology employed by Stanley to arrive at his opinions is not subject to validation, testing, or any other assurance of reliability.

Dr. Rideau states that Defendants' terms and conditions for employing Dr. Rideau as a breast radiologist are set forth in a 14-page Physician Employment Agreement, which details the job's responsibilities, compensation, facility in which she would be working, work days, reimbursement for medical education, amount of annual vacation days, paid time off benefits and other provisions; yet, Stanley never reviewed, requested, or considered the Employment Agreement in reaching his opinions.

She further states that Stanley neither used nor referred to any validated or peer-reviewed vocational labor market methodology, and that he testified he has never heard of the Bureau of Labor Statistics, the U.S. government agency whose publications vocational experts rely on.

Dr. Rideau asserts that the following opinions are based upon insufficient facts with no analytical methods applicable to the facts of this case:

> (1) As of the date of the report [1/21//19], there were 37 breast imaging positions available nationwide. Of those positions, there are three available within a day's drive of Lafayette, Louisiana, including one available in Lafayette.
>
> (2) The median salary for a breast radiologist is $494,000.00, with a median RVU[1] of 9,041 per year. For physicians with RVU's greater than the median, each RVU over the median is generally compensable at $55.99 per hour.
>
> (3) The four most prominent job boards for physicians actively seeking employment are DocCafe, Physician Job Board, Healthy Careers, and Doximity. A review of those job boards did not reveal that DR. Rideau has registered or sought employment there.
>
> [Doc. No. 64-1, p 9-10].

With regard to the first opinion, Dr. Rideau avers that Stanley testified that he could not recall the names of the facilities. With regard to the second opinion, Dr. Rideau avers that Stanley testified that his methodology for determining potential median salary earning for Dr. Rideau has never been tested and has never been academically validated. With regard to the third opinion, Dr. Rideau asserts that Stanley acknowledged that "prominent" simply means that the websites are well known, and he had no hard data to support his opinion. Dr. Rideau concludes that Stanley's testimony would establish, at most, nothing more than the fact that there were job opportunities in 2019, paying unknown amounts of money, with no known opportunity for fringe benefits, with unknown work hours, with unknown other terms and conditions of

---

[1] RVUs are a measure of value used in the United States Medicare reimbursement formula for physician services.

employment, which might've been temporary or part-time, and with no information as to whether Plaintiff would've been hired had she applied. Thus, Stanley's anticipated testimony is not relevant and not helpful under FRE 702(a).

Defendants respond that Stanley conducted a search of the four most prominent job boards in the medical recruitment industry to identify potential job opportunities available to Dr. Rideau after her separation from employment from the LGH Defendants and to determine whether Dr. Rideau was designated as a job seeker on those job boards; that Stanley is aware that the four job boards are prominent in his industry as a result of his twenty-five years of experience; and that he explained that the databases he consulted are well-known in the industry, in the medical community, and in the recruitment community.

Defendants further assert that, after conducting a tailored search, Stanley then compared the open job listing results on those job boards to the median salary of a diagnostic radiologist based on the Medical Group Management Association ("MGMA") data, which is the industry standard for physician compensation. After making the comparison, Stanley identified numerous currently-available job opportunities and was also able to verify that Dr. Rideau had not attempted to seek employment through the industry leading job boards.

This Court finds that Defendants have made a sufficient showing that Stanley's testimony is based upon sufficient facts or data, that the testimony is the product of reliable principles and methods, and that the witness has applied the principles and methods reliably to the facts of the case. As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

### 3. Probative Value Versus Unfair Prejudice

Finally, Dr. Rideau argues that, should Stanley's opinions and testimony be admitted, it would only confuse and/or mislead the jury by supplying a predicate– unreliable under Rule 702 –for an argument by Defendants that, had Dr. Rideau only applied, any of the jobs listed would have alleviated the wage losses claimed in this lawsuit. Dr. Rideau argues that the evidence must, therefore, be excluded, not only as unhelpful under Rule 702(a), but also under Rule 403, because its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.

Dr. Rideau argues that Stanley's opinion and testimony is not of sufficient weight to prove the affirmative defense of failure to mitigate Dr. Rideau's damages. Dr. Rideau avers that to establish a failure to mitigate defense, the Defendants must meet a two-part evidentiary burden: (1) that substantially equivalent work was available; and (2) that plaintiff failed to use reasonable diligence to obtain it, citing *Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972).

Dr. Rideau specifically asserts that Stanley's testimony lacks information that the jury would need to decide if any of the positions identified by Stanley are suitable and/or comparable to plaintiff's former job. Thus, according to Dr. Rideau, the information Stanley now offers will only confuse and/or mislead the jury and cause them only to speculate about whether Plaintiff failed to mitigate her wage loss.

Defendants counter that Stanley's testimony is sufficient to establish both that substantially equivalent work was available, and that Dr. Rideau did not use reasonable diligence in finding replacement employment. Defendants further assert that, notwithstanding the holding

in *Sparks*, the Fifth Circuit subsequently held that an employer does not have to establish the availability of substantially comparable employment if it has proven that the employee has made no reasonable effort to obtain work, citing *Sellers v. Delgado Comm. Coll.*, 839 F. 2d 1132, 1139 (5th Cir. 1989). Thus, according to Defendants, Stanley's testimony, particularly with regard to the issue of whether Dr. Rideau has made a reasonable effort to obtain work, would be probative and helpful to the jury.

The Court finds that, under the factual circumstances of this case, Stanley's testimony would be probative and would assist the trier of fact in determining whether Defendants have proven the affirmative defense of failure to mitigate damages. Further, his testimony would not be unfairly prejudicial, confuse the issues, mislead the jury, create undue delay, waste time, or needlessly result in the presentation of cumulative evidence.

### III. CONCLUSION

For the foregoing reasons, Dr. Rideau's Motion to Exclude Evidence (Report) and Testimony of Defendants' Expert, Timothy W. Stanley [Doc. No. 64] is DENIED.

Monroe, Louisiana, this 26th day of April, 2019.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**