# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **ALECIA M. RIDEAU, M.D.** | **CIVIL ACTION NO. 6:18-CV-00473** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LAFAYETTE HEALTH VENTURES, INC., ET AL.** | **MAG. JUDGE PATRICK J. HANNA** |

## RULING

Pending here is Plaintiff Alecia M. Rideau, M.D.'s ("Plaintiff" or "Dr. Rideau") Motion for Partial Summary Judgment [Doc. No. 67]. Defendants Lafayette Health Ventures, Inc. ("LHVI"); Lafayette General Health System, Inc. ("LGHS"); Lafayette General Medical Center, Inc. ("LGMC"); and Al Patin ("Patin"), (collectively "Defendants"), have filed an opposition [Doc. No. 74]. Plaintiff has filed a reply [Doc. No. 81].

For the following reasons, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

## I. FACTS AND PROCEDURAL HISTORY

Dr. Rideau filed this lawsuit against Defendants under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. ("FMLA"), alleging two claims for relief: (1) interference under the FMLA, in that Defendants illegally denied her FMLA leave; and (2) retaliation under the FMLA, in that Defendants retaliated against Plaintiff for exercising her FMLA rights, culminating in her termination from employment. [Doc. No. 1].

Dr. Rideau is a radiologist whose specialty is interpreting breast imaging. [*Id*. at ¶ 12]. From December 1, 2014, to September 1, 2016, Plaintiff worked at the Breast Center at LGMC.

[*Id*. at ¶ 13].  Dr. Rideau alleges that, after she was diagnosed with breast cancer, took FMLA leave to have a double mastectomy, complained about retaliation associated with exercising FMLA rights, and requested a second FMLA leave for breast reconstructive surgery, Defendants terminated her employment.  [*Id*. at ¶¶ 14, 22, 34 and 35].

Here, Dr. Rideau seeks partial summary judgment dismissing Defendants' affirmative defenses of after-acquired evidence and failure to mitigate damages.

Defendants do not oppose dismissal of their after-acquired evidence defense but do oppose dismissal of their mitigation of damages defense.  This matter is ripe for review.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.

2

*Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248.)

### B. Analysis

#### 1. After-acquired Evidence

Defendants' affirmative defense of after-acquired evidence was grounded on the claim that Dr. Rideau committed previously unknown wrongdoing of such severity that she would have been terminated on those grounds alone if Defendants knew of it at the time of discharge. However, in their opposition, Defendants acknowledge that recent responses to their discovery requests have failed to reveal any documents or information which could be characterized as support for this affirmative defense. Defendants, therefore, do not oppose that portion of Dr. Rideau's Motion for Summary Judgment which is directed to the after-acquired evidence defense.

Accordingly, Dr. Rideau's Motion for Summary Judgment is GRANTED to the extent she seeks a dismissal of Defendants' affirmative defense of after-acquired evidence.

## 2. Duty to Mitigate

A plaintiff suing for back pay has a duty to mitigate her damages using reasonable diligence to obtain substantially equivalent employment. *E.E.O.C v. IESI Louisiana Corp.*, 720 F.Supp.2d 750, 754 (W.D. La. 2010) (citations omitted).

Defendant's burden with respect to a mitigation affirmative defense is heavy and will be met only upon a showing that plaintiff acted unreasonably. *Washington v. Davis*, 01-1863, 2002 WL 1798764 *3 (E.D. La. Aug.5, 2002). The range of reasonable conduct is broad, and a plaintiff must be given the benefit of every doubt in assessing his conduct. *Id*. An attack on the plaintiff's credibility is insufficient to meet the defendant's burden of proof on this issue. *Floca v. Homecare Health Services, Inc.*, 845 F.2d 108, 112 (5th Cir.1988). The reasonableness of a plaintiff's diligence "should be evaluated in light of the individual characteristics of the claimant and the job market." *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990).

### a. Applicable Evidentiary Burden

Dr. Rideau contends that, in response to her discovery requests, Defendants have produced no evidence or documentary proof of her failure to mitigate, thereby entitling her to judgment as a matter of law dismissing this affirmative defense.

Defendants counter that these discovery responses were provided prior to the deposition of Dr. Rideau and prior to the deposition of Defendants' physician job placement expert, Timothy Stanley ("Stanley"), which took place on March 1, 2019, and March 21, 2019, respectively, immediately prior to the expiration of the discovery period. Defendants assert that, after those depositions, they have ample evidence of Dr. Rideau's failure to mitigate her damages.

The parties disagree as to Defendants' evidentiary burden. Dr. Rideau avers that to establish a failure to mitigate defense, the Defendants must meet a two-part evidentiary burden: (1) that substantially equivalent work was available; and (2) that plaintiff failed to use reasonable diligence to obtain it, citing *Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972). Dr. Rideau contends that *Sparks* is controlling here, and, therefore, an employer has to show both that a plaintiff failed to use reasonable effort and that comparable jobs were available which a plaintiff could have discovered and for which he or she was qualified. *Id*. Thus, according to Dr. Rideau, both elements of the burden of proof must be met by an employer asserting failure to mitigate, and Defendants must demonstrate that substantially equivalent work was available.

Dr. Rideau asserts that additional support for her position is found in the Fifth Circuit's Pattern Jury Instructions (Civil Cases), revised as of October 2016, setting forth the standard set forth in *Sparks*. The FMLA pattern instructions on mitigation on pages 264-265 now state: "To prevail on this defense, Defendant [name] must prove, by a preponderance of the evidence: (a) that there was substantially equivalent employment available; (b) Plaintiff[name] failed to use reasonable diligence in seeking those positions; and (c) the amount by which Plaintiff [name]'s damages were increased by [his/her] failure to take such reasonable actions."

Dr. Rideau concludes that Defendants not only fail to satisfy part (a) of this pattern jury instruction, they also failed to present evidence establishing a material issue of fact regarding parts (b) and (c).

But Defendants assert that, notwithstanding the holding in *Sparks*, the Fifth Circuit subsequently held that an employer does not have to establish the availability of substantially comparable employment if it has proven that the employee has made no reasonable effort to

5

obtain work, citing *Sellers v. Delgado Comm. Coll.*, 839 F. 2d 1132, 1139 (5th Cir. 1989) (hereinafter referred to as "*Sellers II*"). In *Sellers II*, the Fifth Circuit held that an employer does not have to establish the availability of substantially comparable employment if it has proven that the employee has made no reasonable efforts to obtain work. *Id*.

The Fifth Circuit reiterated this holding in *Sellers v. Delgado Comm. Coll.*, 902 F. 2d 1189, 1191, 1193 (5th Cir. 1990) (hereinafter referred to as "*Sellers III*"), determining that the plaintiff did not exercise reasonable diligence in pursuing substantially equivalent employment when she averaged only one job application per month. *Id*. at p. 1195.

According to Defendants, the question of what a defendant must prove to establish its failure to mitigate affirmative defense continues to be the subject of a "split" among the courts within the Fifth Circuit. Some courts adhere to the *Sparks* rule. *See Huffman v. City of Conroe*, 2009 WL 361413 at #13 (S.D. Tex. Feb. 11, 2009) (holding that the *Sparks* decision controlled the defendants' burden of proof on mitigation of the plaintiff's damages, and that *Sellers II* and *Sellers III* did not.) Whereas, other courts do not. *See IESI La. Corp.*, 720 F. Supp. 2d at 755 n. 2 (acknowledging the "resurgence" of *Sparks* but applying *Sellers II* and *Sellers III* because "several panels of this circuit have adopted and reiterated it in recent opinions.")

Defendants argue that Dr. Rideau is a highly skilled physician, but that she has limited the geographic scope of her job search to the area around her own city of residence. Defendants conclude that Dr. Rideau should not be able to deflect the consequences of her own lack of diligence by arguing that her lack of diligence is not relevant unless defendant first shows a "substantially equivalent" position available.

Having reviewed the parties' submissions, the Court finds that it need not resolve the "split" at this time.

### b. Substantially Equivalent Work Available

"Substantially equivalent employment" is that "employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the . . . claimant has been discriminatorily terminated." *Sellers III*, 902 F. 2d at 1193 (5th Cir. 1990) (*quoting Sellers II*, 839 F. 2d at 1138). The Fifth Circuit has opined that determining whether a position is substantially equivalent employment involves an analysis of the "pay, status, responsibility, working conditions, or promotional opportunities." *Sellers II,* 839 F. 2d at 1138). The opportunities in question must be in the "specific line of work" in which the employee was engaged. *Ballard v. El Dorado Tire Co*., 512 F.2d 901, 906 (5th Cir. 1975).

Defendants' expert in the field of physician job placement, Stanley, issued a report ("the Report") which purports to establish that there are a number of breast radiologist positions available to Dr. Rideau and that Dr. Rideau had not signed up for any of the four most prominent job search boards [Doc. No. 74-3, p. 12-13]. Stanley also concluded that there were comparable positions in her line of work on those same job boards. At the time of his research in 2019, Stanley located 37 breast imaging positions available nationwide, three of which were located within a day's drive of Lafayette, Louisiana, where Dr. Rideau resides, including one available in Lafayette. *Id*.

Stanley garnered additional information from the Society of Breast Imaging website, a common job board for Dr. Rideau's specialty, after writing his expert report. Stanley's

deposition revealed that, at the time of his deposition, there were 158 available jobs nationwide in Dr. Rideau's field [Doc. No. 74-3, p. 9]. Some of the listings contained on the Society of Breast Imaging website were for large facilities with multiple hospitals.

Dr. Rideau attacks the reliability of Stanley's conclusions on the basis that he did not look at her employment agreement to determine her job description and benefits, and that he did not conduct an adequate investigation to determine whether any of the 158 available jobs nationwide had the identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position she had with Defendants. Defendants object that it would be virtually impossible to know all the nuances of 158 particular positions, including their working conditions, promotional opportunities and benefits.

At the summary judgment stage, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. Further, the question of whether a plaintiff has mitigated her damages while undertaking a search for substantially equivalent employment is "a highly fact-intensive inquiry." *Morgan v. Neiman-Marcus Croup, Inc./Neiman Marcus Direct*, No. CIV.A 305CV0079G, 2005 WL 3500314, at *10 (N.D. Tex. Dec. 20, 2005). Therefore, the Court finds there are genuine issues of material fact as to the "substantially equivalent employment" factor.

    **c.    Reasonable Diligence**

In searching for replacement employment, a plaintiff must be "reasonably diligent" to adequately mitigate her damages. *Sellers III*, 902 F.2d 15 1193 (employee was not reasonably

8

diligent when employee averaged less than one job application per month for a period of three years and months passed when she did not submit any employment applications).

Defendants assert that Dr. Rideau is an interventional breast radiologist, a specialized field of medicine in high demand and that Dr. Rideau admitted in her deposition that, after her termination, she limited her search for replacement employment to only positions in the Lafayette market, in spite of the fact that she had previously worked as a breast radiologist in Opelousas and Baton Rouge, and in spite of the fact that one of her post-termination jobs required her to travel to Houston.

Dr. Rideau testified that she limited the scope of her job search to the Lafayette market because she "needed to not move" and she "had to work within the confines of staying in Lafayette, staying in [her] neighborhood" [Doc. No. 74-2, p. 3]. She attributed this to having a small child, a mortgage, and parents living in Lafayette. *Id*. Defendants assert that failing to search for positions outside of the Lafayette market does not amount to "reasonable diligence".

Dr. Rideau responds that she has no duty to accept employment that is located an unreasonable distance from her home.

Stanley, Defendants' expert, also indicated in his Report that there are a number of breast radiologist positions available to Dr. Rideau and that she had not signed up for any of the four most prominent job search boards. [Doc. No. 74-3, pp. 12, 13].

Defendants assert that in 2016 the only job Dr. Rideau applied for was with Staff Care, doing locums, and in 2017 the only job she applied for was with vRad, reading scans at night, which is known as nighthawk services. They further assert that she has never signed up with any recruiters or placement agencies, although she does state that she has been registered with

9

and received weekly and monthly email announcements regarding job postings from the American Board of Radiology and the Society of Breast Imaging.

Thus, Defendants conclude that, since termination, Dr. Rideau has completed only two applications for employment; that neither position for which she applied was the equivalent of the breast radiologist position she held at the Lafayette General Breast Center; that both jobs for which she applied were in Lafayette, pursuant to her self-selected limitation of applying only in the Lafayette market; and, that she is not currently looking for comparable employment, except for hoping that the other hospital in town with breast radiology services (Lourdes, which now owns Women's and Children's) will reconsider its position that it does not want to hire her.

The Court finds that the above establishes that that there is a genuine issue of material fact as to whether Dr. Rideau has searched regularly and diligently for substantially equivalent replacement employment.

Claimants are not required to take "lesser or dissimilar work" or a "demotion or . . . a demeaning position."  *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 213, 231 (1982).   However, if an employee does not diligently search for substantially equivalent employment, and instead accepts only lesser-paying dissimilar positions, back pay damages should not be awarded for those periods when the employee was employed.  *West v. Nabors Drilling*, 330 F. 3d 379, 394 (5th Cir. 2003).

Accordingly, regardless of Defendants' evidentiary burden, they have produced sufficient evidence to raise a genuine issue of material fact for trial on their mitigation of damages defense.

### III. CONCLUSION

For the foregoing reasons, Dr. Rideau's Motion for Partial Summary Judgment [Doc. No. 67] is GRANTED IN PART and DENIED IN PART. To the extent she seeks a dismissal of Defendant's affirmative defense of after-acquired evidence, the motion is GRANTED. To the extent she seeks a dismissal of Defendant's affirmative defense of failure to mitigate, the motion is DENIED.

Monroe, Louisiana, this 2nd day of May, 2019.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**