# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **ALECIA M. RIDEAU, M.D.** | **CIVIL ACTION NO. 6:18-CV-00473** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LAFAYETTE HEALTH VENTURES, INC., ET AL.** | **MAG. JUDGE PATRICK J. HANNA** |

## RULING

This is an action brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. ("FMLA"). Pending here is an omnibus Motion in Limine [Doc. No. 86] filed by Defendants Lafayette Health Ventures, Inc. ("LHVI"); Lafayette General Health System, Inc. ("LGHS"); and Lafayette General Medical Center, Inc. ("LGMC") (collectively "Defendants"). Plaintiff Alecia M. Rideau, M.D. ("Dr. Rideau") has filed an opposition [Doc. No. 103].

For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. FACTS AND PROCEDURAL HISTORY

Dr. Rideau is a radiologist whose specialty is interpreting breast imaging. [Doc. No. 1. at ¶ 12]. From December 1, 2014, to September 1, 2016, Dr. Rideau worked at the Breast Center at LGMC. [*Id*. at ¶ 13].

On April 6, 2018, Dr. Rideau filed this lawsuit against Defendants alleging two claims for relief: (1) interference under the FMLA, in that Defendants illegally denied her FMLA leave; and (2) retaliation under the FMLA, in that Defendants retaliated against her for exercising her

FMLA rights, culminating in her termination from employment. [Doc. No. 1].

Dr. Rideau alleges that, after she was diagnosed with breast cancer, took FMLA leave to have a double mastectomy, complained about retaliation associated with exercising FMLA rights, and requested a second FMLA leave for breast reconstructive surgery, Defendants terminated her employment. [*Id*. at ¶¶ 14, 22, 34 and 35].

Defendants present five (5) subparts in their motion in limine for the Court's consideration. The Court will consider each in turn.

## II. Applicable Law and Analysis

### A. Applicable Law

#### 1. Motions in Limine

A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds. *Mathis v. Pinnacle Entm't, Inc.,* CIV.A. 11-2199, 2014 WL 2880217, at *5 (W.D.La. June 23, 2014) (quoting *Bocalbos v. Nat'l W. Life Ins. Co*., 162 F.3d 379 (5th Cir. 1998)).

#### 2. Relevancy Under the Federal Rules of Evidence

The essential prerequisite of admissibility is relevance. *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) (Citing Fed. R. Evid. 402). Rule 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Evidence which is not relevant is not admissible. Fed. R. Evid. 402. Implicit in the above definition are two distinct requirements: (1) the evidence must be probative of the

proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action. *Hall*, 653 F.2d at 1005. Whether a proposition is of consequence to the determination of the action is a question that is governed by the substantive law. Simply stated, the proposition to be proved must be part of the hypothesis governing the case a matter that is in issue, or probative of a matter that is in issue, in the litigation. *Id*.

Moreover, pursuant to Rule 403 of the Federal Rules of Evidence, the Court may exclude evidence that satisfies the above requirements for relevancy "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, 1972 Advisory Committee Note.

### 3. Hearsay Under the Federal Rules of Evidence

Rule 801(c) defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pursuant to Rule 802, hearsay is not admissible except as provided by the Federal Rules of Evidence, by rules prescribed by the United States Supreme Court pursuant to statutory authority, or by Act of Congress. Fed. R. Evid. 802.

### 4. Speculation Under the Federal Rules of Evidence

Rule 602 allows witnesses to testify "only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Rule 602 does not apply to a witness' expert testimony; however, Rule 703 requires that an expert opinion be based "on facts or data in the case that the expert has been made aware of or personally observed." "If experts in

3

the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. An expert's testimony, however, must be based in more than "subjective belief or unsupported speculation." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

> B. Analysis
>> 1. The WHCRA

Defendants seek to exclude all evidence, testimony, questions, comments, charges, interrogatories, arguments, or other mention or introduction of the Women's Health and Cancer Rights Act of 1998 (the "WHCRA") or its application because that federal law is irrelevant and unfairly prejudicial to Defendants. Defendants assert that the WHCRA is a federal law that requires health insurers to provide insurance coverage to those "who elect [] breast reconstruction in connection with [a] mastectomy." 29 U.S.C.A. § 1185b. Since Defendants are not health insurers and are in no position to approve or deny insurance coverage for procedures related to Dr. Rideau's treatment for breast cancer, the WHCRA is not relevant, according to Defendants.

Defendants further assert that the WHCRA is nothing more than an insurance coverage mandate which does not impose any standard of conduct or behavior on Defendants and has nothing to do with the FMLA. Thus, Defendants argue that the WHCRA is irrelevant to the pursuit of Dr. Rideau's FMLA claims or the remedies Dr. Rideau seeks under the FMLA, and any evidence or mention of the WHCRA or its application must be excluded from the jury trial of this matter.

Finally, Defendants contend that any allegation or implication by Dr. Rideau that Defendants may have violated an unrelated and wholly inapplicable federal law designed to protect those with breast cancer will undoubtedly elicit an emotional response from the jury, detracting

from the core issues before the jury under the FMLA; would unfairly prejudice Defendants; and would only serve to confuse the issues and mislead the jury.

Dr. Rideau responds that Defendants' self-funded healthcare plan gives them the status of a health insurer to whom the WHCRA applies, citing 29 U.S.C. § 1185b.

Dr. Rideau also contends that Defendants' knowledge of the WHCRA is relevant to the issue of liquidated damages. Under 29 U.S.C. § 2617, an employer who violates the FMLA "shall be liable" for "an additional amount as liquidated damages" unless the employer "proves to the satisfaction of the court that the act or omission which violated [the FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation." Liquidated damages under the FMLA double a plaintiff's recovery of wages, salary, employment benefits, and interest (see 29 U.S.C.§ 2617(a)(1)(A)(iii)) and, consequently, are a significant part of the damages sought to be recovered in an FMLA lawsuit.

Dr. Rideau argues that the employer has the burden of establishing that a failure to obey the FMLA was in good faith and objectively reasonable, and there is a strong presumption in favor of liquidated damages, citing *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 928-29 (5th Cir. 1999), and *Crain v. Schlumberger Technology Co.,* 2017 WL 713673, at *3 (E.D. La. Feb. 23, 2017).

The Court finds that, as an insurance coverage mandate which does not impose any standard of conduct or behavior on Defendants, the WHCRA is irrelevant to Dr. Rideau's FMLA claims. Accordingly, Subpart (1) to Defendants' motion in limine is GRANTED. Any evidence or mention of the WHCRA or its application will be excluded from the jury trial of this matter.

## 2. Impact and Effects of Dr. Rideau's Traumatic Breast Cancer Diagnosis

Defendants seek to exclude testimony regarding the traumatic impact and effect of Dr. Rideau's diagnosis of breast cancer, as well as her unfortunate family history of breast cancer. Defendants further seek to exclude testimony regarding Defendants' purported lack of understanding, experience, compassion, and/or empathy for Dr. Rideau in her capacity as a breast cancer and mastectomy patient.

Defendants contend that the jury will be asked to decide whether Dr. Rideau has established valid claims of interference and retaliation or discrimination under the FMLA, and that this evidence and testimony has no probative value in establishing any of the elements for these claims. Instead, this evidence will only serve to elicit sympathy from the jurors and unfairly prejudice Defendants.

Dr. Rideau, on the other hand, argues that Defendants have placed at issue whether she acted too quickly in having surgery for breast cancer, and they complained about the length of her leave, which they deemed an inconvenience. Therefore, she must be able to introduce evidence regarding her significant family history of breast cancer, which prompted her to select a double mastectomy and to schedule that surgery as soon as possible. Further, to combat Defendants' assertion that she took a long and inconvenient medical leave, she also must be permitted to discuss what is involved in recovering from a double mastectomy.

Additionally, Dr. Rideau asserts that Defendants have placed at issue whether her reconstruction was a matter of urgency. Dr. Rideau contends she will also need to present evidence about why she needed to complete the second stage of her treatment as soon as possible. Finally, Dr. Rideau assets that any statements by Defendants about Dr. Rideau or her leave that evince a

lack of empathy or understanding are highly relevant for purposes of establishing retaliatory animus.

The Court finds that, in the context of an FMLA case, where there have been allegations that Defendants repeatedly criticized Dr. Rideau for taking FMLA leave and for attempting to schedule additional medical leave, this evidence is relevant to her claims. Furthermore, the value of this evidence substantially outweighs any danger of unfair prejudice.

Accordingly, Subpart (2) to Defendants' motion in limine is DENIED.

### 3. Testimony from Dr. Wendy Dean-Colomb and Dr. Paul Billeaud

Defendants seek to exclude the testimony of two additional witnesses recently disclosed by Dr. Rideau. According to Dr. Rideau, Dr. Dean-Colomb would testify "concerning Plaintiff's cancer diagnosis and selection of physician(s) and other matters relevant to the case" and Dr. Billeaud would provide testimony "concerning Plaintiff's efforts to find other work and other matters relevant to the case." Defendants object to Dr. Dean-Colomb's and Dr. Billeaud's expected testimony.

#### a. Dr. Dean-Colomb

Defendants seek to exclude evidence from Dr. Dean-Colomb regarding Dr. Dean-Colomb's purportedly negative past experiences with breast cancer as well as the related treatment provided by physicians employed with Defendants. Defendants contend that such evidence is wholly unrelated to the jury issues presented by Dr. Rideau's FMLA claims. Moreover, Defendants contend that such non-party testimony regarding the prior experiences and negative impact of breast cancer and related medical treatment will unfairly prejudice the Defendants by invoking sympathy from the jury.

7

Defendants assert that Dr. Dean-Colomb was not identified as an expert witness prior to the December 21, 2018 expert deadline, and therefore she cannot testify as an expert witness. Additionally, Defendants contend that since Dr. Dean-Colomb is not Dr. Rideau's treating physician, she has no independent knowledge of Dr. Rideau's cancer diagnosis. Instead, the sole basis for testimony regarding Dr. Rideau's cancer diagnosis must be statements, whether oral or written, from Dr. Rideau, Defendants, or non-parties. As such, any such testimony from Dr. Colomb regarding Dr. Rideau's cancer diagnosis is inadmissible hearsay under Fed. R. Evid. 801 and 802, and, must be excluded from the trial in this matter, according to Defendants.

Defendants further assert that Dr. Rideau will use Dr. Dean-Colomb to support her allegations that Defendants steered her to physicians employed by Defendants for her cancer-related surgeries. Since Dr. Dean-Colomb was not present during these discussions, Defendants argue that this testimony is also inadmissible hearsay.

Dr. Rideau responds that Dr. Dean-Colomb is an impeachment/rebuttal witness, that she was added to the initial disclosures out of an abundance of caution, that she is neither a treating physician nor an expert and has not been listed for those purposes, and that she was not listed with the intent of detailing her own medical problems. Dr. Rideau indicates that whether she is called depends primarily on the testimony of the defense witnesses. She does not indicate what witness or testimony Dr. Dean-Colomb will impeach.

Subpart (3)(a) to Defendants' motion in limine is GRANTED. Since Dr. Dean-Colomb is neither an expert witness nor Dr. Rideau's treating physician, any testimony she might offer with regard to Dr. Rideau's cancer diagnosis would be inadmissible hearsay. Additionally, any evidence she might offer with regard to her own cancer diagnosis and her own experiences would be irrelevant.

### b. Dr. Billeaud

Defendants assert that Dr. Rideau intends to call Dr. Billeaud, her neighbor and friend, during trial to support Dr. Rideau's claims that she has made efforts to find other work. Defendants contend that all of Dr. Billeaud's anticipated testimony is inadmissible hearsay.

Specifically, Defendants anticipate that Dr. Billeaud will be asked to testify about statements made by potential employers regarding Dr. Rideau's purported employment opportunities and employability. Defendants argue that Fed. R. Evid. 801 and 802 expressly prohibit hearsay testimony regarding any statements made by third parties, whether such statements are offered as direct conversation with the third parties or Dr. Billeaud's recounting of the third-party statements during conversations with Dr. Rideau.

Dr. Rideau responds that Dr. Billeaud is a "may-call" witness on the issue of Defendant's affirmative defense of mitigation of damages, and that there is no basis for excluding Dr. Billeaud's testimony now, since Defendants have not identified the specific hearsay statements they seek to have excluded.

Dr. Rideau further asserts that Dr. Billeaud should be allowed to testify regarding the actions he took on Dr. Rideau's behalf to help her find other work, which is relevant to the issue of mitigation of damages.

Subpart (3)(b) to Defendants' motion in limine is DENIED at this time. The Court will not allow this evidence if it is inadmissible hearsay. If at trial, Dr. Rideau's evidentiary presentation is made in such a way that it falls within an exception to the hearsay rule, the evidence will be allowed. However, the Court cannot speculate if and how such evidence might be presented at trial, and, therefore, this subpart is DENIED at this time.

### 4. Evidence of Volume of Scans Read by Dr. Daigle and Dr. Rideau

Defendants seek to exclude evidence and testimony regarding the number of radiological studies read by Dr. Daigle and Dr. Rideau. Defendants argue that this evidence is not relevant because there is nothing to indicate that any standard was imposed upon either physician to read a certain minimum number of studies or that the quantity of scans read by either doctor was ever a factor for discipline or evaluation. Defendants contend that Dr. Rideau is attempting to construct a story in which she was falsely accused of not working hard enough, even though she admits that no one ever told her that she was terminated because she did not work hard enough. Defendants assert this is a false comparison, not made by anyone other than Dr. Rideau, that will confuse and inflame the jury.

Dr. Rideau responds that (1) evidence of the volume of scans read by each doctor is probative of Dr. Daigle's credibility with regard to a supposed reason for termination; and (2) the volume of scans read by each doctor is comparator evidence through which Dr. Rideau will establish that she was treated less favorably than an employee who did not take FMLA leave.

Dr. Rideau contends that under Fed. Rule Evid. 607, she is permitted to challenge Dr. Daigle's credibility, and, since Dr. Daigle's threat to quit purportedly figured into Defendants' rationale for terminating Dr. Rideau, the jury's assessment of Dr. Daigle's credibility is especially important. Dr. Rideau contends further that these numbers prove Dr. Daigle was struggling with efficiency issues, and thus, a jury could conclude that Dr. Daigle's allegation that Dr. Rideau had suddenly turned into a difficult co-worker, prompting her threat to quit, is not credible, and that the real source of Dr. Daigle's discomfort was her displeasure at being forced to cover for another doctor on FMLA leave in light of her own efficiency difficulties, as reflected by the numbers. Dr. Rideau therefore argues that the probative value of this evidence, which directly relates to one of

Defendants' stated reasons for terminating Dr. Rideau, substantially outweighs any risk of prejudice to Defendants.

Additionally, Dr. Rideau argues that evidence regarding the number of mammography screenings read by Dr. Daigle and Dr. Rideau is comparator evidence that Dr. Rideau will use to show that she was not treated as well as Dr. Daigle, who did not take FMLA leave. While Dr. Rideau was criticized for not working hard enough, having been away from work for over two months, and was then terminated immediately upon asking for additional FMLA leave, Dr. Daigle received no such criticism regarding her low screening numbers. Dr. Rideau, therefore, can prove that she was treated less favorably than a comparator employee, whose productivity was the same or worse than her own and who did not take FMLA leave.

Subpart (4) to Defendants motion in limine is GRANTED IN PART and DENIED IN PART. To the extent Defendants seek to exclude this testimony on the basis that it is not relevant because there is nothing to indicate that any standard was imposed upon either physician to read a certain minimum number of studies or that the quantity of scans read by either doctor was ever a factor for discipline or evaluation, the motion is GRANTED. To the extent Defendants seek to exclude this testimony on the basis that it is not relevant to an assessment of Dr. Daigle's credibility, the motion is DENIED at this time. If at trial, evidence is presented that presents an issue with regard to Dr. Daigle's testimony or credibility, the Court will address any objection made by Defendant at that time. However, the Court cannot speculate if and how such evidence might be presented at trial, and, therefore, this subpart is DENIED at this time.

### 5. Dr. Rideau's Employment Would Have Been Renewed

Defendants seek to exclude any evidence or testimony based on the assumption that Dr. Rideau's employment contract with Defendants would have been renewed for one of the two three-

year renewal terms if she had not been terminated. Defendants contend this evidence is speculative or purely conjectural.

Dr. Rideau responds that a motion in limine is not the appropriate vehicle for resolving substantive issues and should not be used to resolve factual disputes or weigh evidence, which is the province of the fact finder, citing *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000).

Subpart (5) to Defendants' motion in limine is DENIED. The issue of whether the contract would have been renewed is a factual issue for the jury.

### III. Conclusion

Accordingly, for these foregoing reasons, Defendants' Omnibus Motion in Limine [Doc. No. 86] is **GRANTED IN PART** and **DENIED IN PART**.

MONROE, LOUISIANA, this 1st day of July, 2019.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**