UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **ALECIA M. RIDEAU, M.D.** | **CIVIL ACTION NO. 6:18-CV-00473** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LAFAYETTE HEALTH VENTURES, INC., ET AL.** | **MAG. JUDGE PATRICK J. HANNA** |

## RULING

This is an action brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. ("FMLA"). Pending here is an omnibus Motion in Limine [Doc. No. 87] filed by Plaintiff Alecia M. Rideau, M.D. ("Dr. Rideau"). Defendants Lafayette Health Ventures, Inc. ("LHVI"); Lafayette General Health System, Inc. ("LGHS"); and Lafayette General Medical Center, Inc. ("LGMC") (collectively "Defendants") have filed an opposition [Doc. No. 102].

For the following reasons, Dr. Rideau's motion is GRANTED IN PART and DENIED IN PART.

### I.    FACTS AND PROCEDURAL HISTORY

Dr. Rideau is a radiologist whose specialty is interpreting breast imaging. [Doc. No. 1. at ¶ 12]. From December 1, 2014, to September 1, 2016, Dr. Rideau worked at the Breast Center at LGMC. [*Id*. at ¶ 13].

On April 6, 2018, Dr. Rideau filed this lawsuit against Defendants alleging two claims for relief: (1) interference under the FMLA, in that Defendants illegally denied her FMLA leave; and (2) retaliation under the FMLA, in that Defendants retaliated against her for exercising her

FMLA rights, culminating in her termination from employment. [Doc. No. 1].

Dr. Rideau alleges that, after she was diagnosed with breast cancer, took FMLA leave to have a double mastectomy, complained about retaliation associated with exercising FMLA rights, and requested a second FMLA leave for breast reconstructive surgery, Defendants terminated her employment. [*Id*. at ¶¶ 14, 22, 34 and 35].

Dr. Rideau presents four (4) subparts in her motion in limine for the Court's consideration. The Court will consider each in turn.

## II. Analysis

### A. Dr. Rideau's Prior and Post-Termination Employment Records

#### 1. Prior Employment Records

Dr. Rideau moves the Court to preclude Defendants from offering any evidence or argument about her prior employment records from facilities at which she worked before she was employed by Defendants.

Defendants do not oppose this request.

Accordingly, Subpart (A) to Dr. Rideau's motion in limine is **GRANTED IN PART**. To the extent Dr. Rideau seeks to exclude any argument about or any reference to her prior employment records from facilities at which she worked before she was employed by Defendants is excluded, the motion is **GRANTED**.

#### 2. Post-Termination Employment Records

Dr. Rideau moves the Court to exclude any evidence or argument regarding her post-termination records from Staff Care,[1] save and except her compensation, promotional

---

[1] Staff Care was an employer of Dr Rideau's after her termination. Dr. Rideau's current employer is vRad. She states that she does not object to the records from vRad at this time because those records contain compensation documents and wage information which she believes is relevant to her damages and mitigation.

2

opportunities, dates of employment, and job responsibilities. Dr. Rideau contends the remainder of the Staff Care records are immaterial to any claim and defense in this case. Specifically, Dr. Rideau argues that her employment application, her resumes, various verifications, and licensure information are immaterial to the issues in the case and would be cumulative in nature. She asserts this information has no relation to any "fact . . . of consequence" in this lawsuit under FED. R. EVID 401. Furthermore, she assets that, even assuming such evidence is at all relevant, its minimal probative value is substantially outweighed by its likelihood of confusing issues and wasting time at trial under FED. R. EVID 403.

Defendants respond that the Staff Care documents which Dr. Rideau is attempting to exclude consist of such items as her medical license verifications, board and fellowship verifications, Continuing Medical Education certificates, liability coverage, resumes, and applications. Defendants contend that this evidence is admissible to show Dr. Rideau's employability and her qualifications, and to support Defendants' affirmative defense of failure to mitigate damages.

According to Defendants, this evidence is relevant to show that Dr. Rideau is already licensed in the states of Arizona, Georgia, Louisiana, Minnesota, North Carolina, and Tennessee, yet she has voluntarily chosen to restrict her job search to Lafayette, Louisiana. Additionally, it would show that she obtained a Texas medical license after her termination, and that the Staff Care job she accepted required her to travel to Houston. Finally, this evidence would corroborate the anticipated testimony of Timothy Stanley, Defendants' expert in physician job placement, because it is consistent with the types of positions for which Stanley searched to determine whether comparable jobs were available for Dr. Rideau.

The Court finds that the Staff Care information at issue is relevant to Dr. Rideau's alleged efforts to mitigate her damages, and, further, that its probative value is not substantially outweighed by any likelihood of confusing the issues or wasting time at trial.

Accordingly, Subpart (A) to Dr. Rideau's motion in limine is **DENIED IN PART**. To the extent Dr. Rideau seeks to exclude any evidence or argument regarding her post-termination records from Staff Care, the motion is **DENIED**.

### B. Defendants' General Leave Policies and Procedures

Dr. Rideau seeks to exclude evidence of Defendants' general leave policies and procedures which speak to how its employees should handle requests for "non-FMLA" leave, such as PTO, EIB, vacation, bereavement, jury duty, and personal leave. Dr. Rideau argues that the only relevant policy or procedure here is the policy or procedure for seeking "FMLA" leave. She argues this evidence is immaterial and irrelevant to any issue in this case, and its mention would be unfairly prejudicial. FED. R. EVID. 401, 402, and 403.

Dr. Rideau asserts that Defendants will attempt to use the evidence of the general procedure for seeking non-FMLA leave to muddy the waters and to create an issue with the procedure that Dr. Rideau used to request FMLA leave, and thus the relevance of the non-FMLA leave procedure is substantially outweighed by its likelihood of confusing issues and wasting time at trial. She further argues that the only conceivable purpose for which Defendants' general leave policies could be used would be to suggest that she failed to follow policy and procedure in submitting FMLA paperwork. Therefore, the evidence of general leave policies would be prejudicial to her.

Defendants respond that there is no basis to exclude selected portions of Defendants' leave policy, that the entirety of the policy is highly relevant, and that Dr. Rideau's efforts to have the jury see only selected portions of it out of context should be rejected. For instance, Defendants

assert that a complete copy of the leave policy would reveal that Section V of that policy, entitled "Procedure," is not restricted to any particular type of leave.

Defendants contend further that Dr. Rideau is seeking to exclude that portion of the leave policy which requires the employee and the Department Manager to complete a leave of absence form 30 days prior to the beginning of the leave date when the leave is foreseeable. They additionally assert that Dr. Rideau is seeking to exclude that portion of the leave policy which provides that only the Human Resources Department can approve or deny FMLA leave, which would belie her allegation that her supervisor, Al Patin, denied her FMLA request.

The Court finds that the entirety of the Defendants' leave policy is relevant and that Defendants could be unfairly prejudiced if the jury was allowed to see only selected portions of it, taken out of context.

Accordingly, Subpart (B) to Dr. Rideau's motion in limine seeking the exclusion of evidence of Defendants' general leave policies and procedures which speak to how its employees should handle requests for "non-FMLA" leave is DENIED.

### C. Defendants' Standards of Behavior

Dr. Rideau asks this court to exclude the document entitled, "Standards of Behavior," ("the Standards"), which every employee, including Dr. Rideau, signs and which contains Defendants' philosophical points of mission, because (1) it is not an objective employment policy, (2) Dr. Rideau was never subjected to any discipline or write-up for violation of said standards, (3) there were no formal complaints or investigations of violations of said standards that formed the basis of her termination, and (4) Defendants' after-acquired evidence defense has been dismissed.

Dr. Rideau asserts that this is not the type of objective employment policy that can be used to demonstrate that the Defendants' asserted reason for the termination was non-discriminatory

5

and/or was pretextual. Dr. Rideau further assert that Defendants do not even refer to it as a "policy" –only as "values." Therefore, according to Dr. Rideau, this document would only confuse the jury, lengthen the trial, and waste time.

Defendants respond that the Standards would be relevant to the instant litigation because the jury will be tasked with determining the motivation for Defendants' decision to terminate Dr. Rideau. According to Defendants, the Standards demonstrate the mission and vision of the Defendants and the expectation of supportiveness, etiquette, respect, vibrancy, integrity, communication and excellence in service expected of every employee. Defendants contend that this evidence is relevant to show that Dr. Rideau's behavior leading up to her termination was contrary to the defined culture of the Defendants explained in the Standards, and that such behavior ultimately led to her termination.

The Court finds that the Standards are relevant to the jury's consideration of the circumstances surrounding Dr. Rideau's termination and the alleged non-discriminatory reasons for termination offered by the Defendants.

Accordingly, Subpart (C) to Dr. Rideau's motion in limine seeking to exclude the document entitled, "Standards of Behavior," is DENIED.

### D. Time Off Requests in 2015

Dr. Rideau seeks to exclude evidence of her time-off requests dating back to 2015, which were not for FMLA leave but were used for continuing education, vacation, paid time off ("PTO"), and/or used to request approval for "flex time." Dr. Rideau contends that since neither these requests nor excessive absenteeism were advanced by Defendants as reasons for her termination, these requests have little probative value and their introduction would be substantially outweighed by the risk of unfair prejudice.

Alternatively, Dr. Rideau requests that the Court instruct the jury that Dr. Rideau, like any other eligible employee, may have taken time off for education, annual leave, and/or vacation leave under the terms of her contract and/or her employer's policies, and therefore, any prior leaves are not and may not be presented to suggest that Dr. Rideau took too may leaves of absence or for any other negative conclusion about Dr. Rideau's leave history.

Defendants, on the other hand, assert that they intend to utilize evidence of Dr. Rideau's non-FMLA leave to prove that she failed to make a reasonable effort to schedule the FMLA leave at issue in a manner that was consistent with Defendants' policy and that did not unduly disrupt the Defendants' operations.

More particularly, Defendants contend this evidence will prove (a) that Defendants consistently requested that Dr. Rideau find available physician coverage for non-FMLA leave, (b) that Dr. Rideau was aware of Defendants' legitimate need for physician coverage, (c) that Dr. Rideau historically ensured that Defendants had enough physician coverage during her scheduled non-FMLA leave, and (d) that all of Dr. Rideau's leave requests – whether FMLA or non-FMLA – were accommodated in accordance with Defendants' leave policies.

Finally, Defendants contend that evidence of Dr. Rideau's prior non-FMLA leave will also prove that Defendants permitted her to take lengthy non-FMLA leave, which is relevant to advance Defendants' defense to her retaliation claim by establishing that her extensive non-FMLA leave never resulted in reprimand or termination.

The Court finds that evidence of Dr. Rideau's non-FMLA leave is relevant to the claims and defenses to be presented to the jury and does not pose a risk of undue prejudice.

Accordingly, Subpart (D) to Dr. Rideau's motion in limine seeking exclusion of her time-off requests dating back to 2015, which were not for FMLA leave is DENIED.

### III. Conclusion

For these foregoing reasons, Dr. Rideau's omnibus Motion in Limine [Doc. No. 87] is **GRANTED IN PART** and **DENIED IN PART**.

MONROE, LOUISIANA, this 1st day of July, 2019.

                                       **TERRY A. DOUGHTY**
                                       **UNITED STATES DISTRICT JUDGE**